**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0572n.06

Case No. 19-5693

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 14, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| ANGELA SUDDARTH, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | **OPINION** |
| | ) | |

BEFORE: CLAY, THAPAR, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Defendant Angela Suddarth appeals her conviction for making a false declaration in violation of 18 U.S.C. § 1623. She argues that the evidence was insufficient to sustain her conviction, that venue was improper in the Middle District of Tennessee, and that the district court committed reversible error by communicating with the jury outside the presence of the parties. We agree that the record contains insufficient evidence and reverse.

I.

This case begins with the sale of Shipper Direct Logistics, Inc. ("Shipper Direct"), a truckload transportation brokerage business managed by Suddarth. In short, Shipper Direct matched shippers with available carriers. Suddarth and Echo Global Logistics, Inc. ("Echo") began negotiating the sale of all of Shipper Direct's assets to Echo in the spring of 2012. As part of these negotiations, Echo required Suddarth to provide financial information that would allow Echo to determine the value and financial health of Shipper Direct. On July 19, 2012, Echo and Suddarth

entered an asset purchase agreement in which Echo agreed to purchase all of Shipper Direct's assets for $8.9 million.

Soon after, Echo realized that Shipper Direct was worth far less than it had paid and filed a civil lawsuit against Suddarth, and others, alleging fraud, conspiracy, and breach of contract. *Echo/Tenn. Holdings, LLC v. AvidPath Inc.*, No. 1:13-cv-309, 2014 WL 1698340, at *1 (N.D. Ill. Apr. 29, 2014). Echo's primary allegation was that Suddarth orchestrated a scheme to defraud Echo by furnishing false financial information and transmitting it to Echo by email during their negotiations. *Id.* On May 28, 2013, the court entered a default judgment against Suddarth and her codefendants. *Id*. Suddarth moved to set aside the judgment and, in support of her motion, signed and filed an affidavit explaining the circumstances of the sale of Shipper Direct to Echo. Suddarth stated in the affidavit that "we did our accounting on a cash basis." (Gov't Trial Ex. 27 at PageID # 245.) It is this statement that undergirds her conviction.

In May 2015, in the Middle District of Tennessee, the government indicted Suddarth on twenty-two counts related to the alleged fraudulent transaction. Count 18 alleged that Suddarth's statement that "all accounting for her business was done on a case basis" was a false declaration in violation of 18 U.S.C. § 1623. (R. 1, Indictment at PageID # 12.) The government's evidence in support of Count 18 was limited. Besides the affidavit itself, the attorney who represented Suddarth in the underlying civil proceeding testified that:

> Ms. Suddarth provided the information and [he] put it into an affidavit form. . . .
> Ms. Suddarth came to [his] office after the language [in the affidavit] was drafted
> and she made whatever changes that were necessary and came to [his] office here
> in Nashville. And once she signed it, one of [his] assistants filed it on the Pacer
> System.

(R. 159, Trial Tr. at PageID # 1698–99.) In its opening statement, the government stated "that in the context of that civil suit [Suddarth] submitted an affidavit that contained false statements."

(R. 158, Trial Tr. at PageID # 1429.) Kyle Sauers, an Echo employee, testified that Echo used accrual-based accounting. (R. 159, Trial Tr. at PageID # 1576.) Sauers also testified that any distinction between cash and accrual-based accounting would be a distinction without a difference: "[t]here really isn't much difference in the profit and loss. This would really be no difference. It might be a little [difference in] timing . . . . But the overall financials, the profit and loss, would not change much between the two accounting methods." (R. 159, Trial Tr. at PageID # 1578–79.) And the evidence included several financial documents labeled "Accrual Basis" that Suddarth provided to Echo during closing. (Gov't Trial Ex. 1-2; Gov't Trial Ex. 2-2; Gov't Trial Ex. 2-8.)

At the close of the government's case in chief Suddarth moved for acquittal on Count 18, under Fed. R. Crim. P. 29(a), arguing that the government failed to establish that the Middle District of Tennessee was a proper venue. The court took this motion under advisement. After presenting her case in chief, Suddarth renewed all motions for acquittal and the court denied Suddarth's improper venue motion for Count 18 on the merits. The jury returned not guilty verdicts on all counts except Count 18. Following sentencing, Suddarth appealed.

## II.

We review insufficient evidence claims to determine whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

---

[1] The dissent concludes that Suddarth failed to preserve her insufficiency of the evidence claim but also that the government forfeited the forfeiture argument. We do not dispute this analysis. But neither party's brief argues forfeiture, nor do they dispute that the *Jackson v. Virginia* standard is appropriate here. Instead, the government mentioned the issue at oral argument for the first time. So any discussion of forfeiture is thus unnecessary. *See City & Cty. of S.F., Cal. v. Sheehan*, 135 S. Ct. 1765, 1775 (2015); *cf. In re Brown*, 851 F.3d 619, 625–26 (6th Cir. 2017).

III.

To violate 18 U.S.C. § 1623, a person must "under oath . . . in any proceeding before . . . any court . . . of the United States knowingly make[] [a] false material declaration."[2] Suddarth argues that the government presented insufficient evidence on both the falsity and materiality elements. Count 18 was limited to Suddarth's assertion "[t]hat all accounting for her business was done on a cash basis."[3] (R.1, Indictment at PageID # 12.) To succeed, Suddarth must show that no rational juror could have found beyond a reasonable doubt that Shipper Direct conducted its accounting on other than a cash basis *or* that the accounting method Shipper Direct used was material to the civil proceedings in the Northern District of Illinois.

"The falsity of the statements at issue is necessarily an element under § 1623." *United States v. Frost*, 125 F.3d 346, 386 (6th Cir. 1997). The government, however, has failed to put forth *any* evidence that Shipper Direct conducted its accounting on other than a cash basis.

The government first argues that "[t]rial testimony established that financial information *submitted* by Suddarth to representatives of Echo Global Logistics had been prepared on an accrual basis, not a cash basis." (Appellee's Br. at 17 (emphasis added).) But just because a company uses one accounting method to prepare documents for closing doesn't necessarily mean that method is standard for the company. In fact, Suddarth's affidavit explicitly states that the submitted financial documents were prepared on an accrual basis at Echo's request. Suddarth wrote:

---

[2] The statute also includes making a false declaration within "document[s]" and "record[s]" provided to the United States courts. 18 U.S.C. § 1623(a).

[3] Count 19—on which the jury acquitted Suddarth—specifically alleged Suddarth's statement that an Echo employee "prepared accrual load level detail reports" was a false declaration. (R.1, Indictment at PageID # 13.) The jury also acquitted her on Count 17, which alleged Suddarth's statement "[t]hat she did not misrepresent anything to Echo with respect to the sale of Shipper Direct or any other business" was a false declaration. (R. 1, Indictment at PageID # 12.)

> [t]hat we did our accounting on a cash basis and Echo/Tennessee Holdings, LLC wanted the numbers to reflect accrual so Kyle Sauers and Mike Bloss actually created accrual numbers and from load level detail reports from the freight management system. The final balance sheet which was provided at closing was prepared and provided to the closing attorneys by Kyle Sauers who worked for the Plaintiffs. The Plaintiffs insisted on numbers on an accrual basis which was not how Shipper Direct Logistics, Inc. accounted for its business.

(Gov't Trial Ex. 27 at PageID # 244–45.) It is consistent for Shipper Direct to have conducted its accounting on a cash basis but submitted documents prepared on an accrual basis for closing. Echo CFO Kyle Sauers's explanation of due diligence confirms this. He described due diligence as the process by which the selling company provides documentation necessary to assure the buyer of the seller's financial health. (R. 159, Trial Tr. at PageID # 1562 (explaining due diligence as "the process of understanding the business, verifying the books and records, looking at all the information that the company is willing—willing to give you to verify the financial statements that they've given us.").) So due diligence was on Echo's terms, and if Echo was unhappy the deal would fall through. Thus, it makes perfect sense for Shipper Direct to have conformed their financial statements to Echo's preferred accounting method for closing.

Suddarth's statement covered by Count 18 speaks only to the *standard* accounting method used by Shipper Direct—that the accounting "was done on a cash basis." (*Id.*) Especially given Suddarth's uncontradicted testimony that Echo requested closing documents be prepared on an accrual basis, these documents do not establish that Shipper Direct conducted its accounting on other than a cash basis. What's more, when specifically asked if Shipper Direct provided Echo with a "description of accounting methods, practices, [or] any known differences from GAAP," Sauers responded: "There was not a written statement about accounting practices. They did not have that." (R. 159, Trial Tr. at PageID # 1671.) So Echo could not even speak to Shipper Direct's

standard accounting procedures. Counts 17 and 19 more appropriately alleged false declarations related to the submission process, but the jury acquitted Suddarth on these counts.[4]

And context matters. "[I]n perjury cases, district courts should view a witness's testimony as a whole and [her] statements should not be taken out of context." *United States v. Ronda*, 455 F.3d 1273, 1294 (11th Cir. 2006); *United States v. Serafini*, 167 F.3d 812, 820–24 (3d Cir. 1999) (similar); *Van Liew v. United States*, 321 F.2d 674, 677–78 (5th Cir. 1963) (similar); *Fotie v. United States*, 137 F.2d 831, 842 (8th Cir. 1943) (similar); *see also United States v. Thomas*, 612 F.3d 1107, 1116 (9th Cir. 2010) (similar). And here, the context of Suddarth's declaration makes all the difference. Just after Suddarth's supposedly perjurious statement is her clarification that Echo required Shipper Direct to provide its financial data in an accrual format. That Echo received what it wanted doesn't show Shipper Direct used something other than cash accounting "for *its* business." (Gov't Trial Ex. 27 at PageID # 245 (emphasis added).) It just shows that Shipper Direct knew how to close a deal. Again, the insufficient evidence standard asks whether any rational juror could have concluded *beyond a reasonable doubt* that each essential element of the offense was established. *See Jackson*, 443 U.S. at 319. Given the substantial doubts expressed above, the government has not satisfied this standard based on the documents submitted during closing.

The dissent argues that these documents establish that Shipper Direct conducted its accounting on an accrual basis by trying to link the documents to a single sentence in a several-

---

[4] The government's only record citation in its attempt to establish the falsity of Suddarth's declaration is Kyle Sauers's testimony that all the documents submitted by Suddarth to Echo during closing were prepared consistent with, and labeled as, accrual-based accounting. (*See* R. 159, Trial Tr. at PageID # 1574–79.) But Suddarth concedes that these documents were prepared on an accrual basis, only arguing, as discussed here, that these documents departed from Shipper Direct's standard practice. (*See* R. 160, Trial Tr. at PageID # 2010.) Although there was a dispute at trial about who prepared these documents, the jury resolved that dispute when it acquitted Suddarth on Count 19, which specifically alleged that Suddarth's statement that an Echo employee prepared the documents was a false declaration.

hundred-page purchase agreement. That link, crucial to the dissent's argument, is unsupported by the evidence. The sentence at issue is in the Asset Purchase Agreement that Suddarth signed and asserts that "[t]he Financial Statements have been prepared in accordance with Seller's standard accounting policies and procedures applied on a consistent basis, are complete and correct in all material respects, and present fairly as of their respective dates the financial condition and results of operations of the Business[.]" (Gov't Trial Ex. 7 at 21.) Remarkably, the government has not cited this passage once during this appeal; neither in its brief, nor at oral argument.

Importantly, there is no evidence that the exhibits labeled "Accrual Basis" are the same "Financial Statements" that the Asset Purchase Agreement says Shipper Direct submitted "in accordance with Seller's standard accounting policies and procedures applied on a consistent basis." As the dissent points out, the dates of these exhibits align with the Asset Purchase Agreement. But given the large volume of documents that change hands during due diligence, the dates of the documents alone cannot establish a connection to the Asset Purchase Agreement. Not only has the government pointed to no evidence linking these documents to the Asset Purchase Agreement but no one at trial or on appeal—until the dissent today—has argued that the trial exhibits labeled "Accrual Basis" are the financial statements referenced by the Asset Purchase Agreement. Without evidence of such a link, assuming the exhibits represent Shipper Direct's standard accounting practices is pure speculation. As we have said before, "the web of inference is too weak on these facts to permit any rational trier of fact, absent sheer speculation, to find *beyond a reasonable doubt* that" Suddarth's declaration was false. *United States v. Sliwo*, 620 F.3d 630, 637 (6th Cir. 2010) (cleaned up).

More telling is Sauers's own testimony about this section of the Asset Purchase Agreement. After being directed to the relevant section, Sauers was asked, "what is that," and he responded: "it's a representation that the financial statements are true and accurate." (R. 159, Trial Tr. at PageID # 1597.) And after reading the section into the record, the government asked Sauers "what did that mean to you as a buyer?" (*Id*. at PageID # 1598.) He responded: "That means that the – that Angela's attesting to the fact that the financial statements that she has given us are true and accurate." (*Id*.) The government was using this section of the Asset Purchase Agreement to prove the falsity of Suddarth's declaration covered by Count 17—that she did not misrepresent anything to Echo related to the sale of Shipper Direct—not Count 18. Sauers's testimony is clear. The parties to the Asset Purchase Agreement believed this section to mean that the information provided in the financial documents was not fraudulently prepared, not that it was an assertion by Shipper Direct that it customarily used accrual-based accounting. And the government's failure to cite this evidence—either in its brief or at oral argument—suggests that the government itself thinks the evidence is relevant to a different count.

The dissent also points to Sauers's later testimony that the agreements between Shipper Direct and Echo referred to accrual-based accounting, that Shipper Direct's financial statements were always labeled as accrual-based, that Sauers and Suddarth had talked about accrual-based accounting, and that Shipper Direct wouldn't have accounts receivable or accounts payable data if they conducted their accounting on a cash basis. But the dissent omits two key pieces of information. First, this section of Sauers's testimony responded to questioning about "the financial statements *provided* to [Sauers] by Ms. Suddarth[.]" (R. 159, Trial Tr. at PageID # 1575–76 (emphasis added).) And we've already discussed why the documents provided during closing aren't necessarily probative of Shipper Direct's normal accounting method. Second, Sauers later

8

testified that Shipper Direct never provided a "description of accounting methods, practices, [or] any known differences from GAAP." (R. 159, Trial Tr. at PageID # 1671.) So Sauers admitted that he had no first-hand knowledge of whether Shipper Direct conducted their accounting on a cash or accrual basis and he was not a credible witness on the topic.[5]

The government also argues that Suddarth's admission "that there was a difference between the total net income determined on an accrual basis as opposed to a cash basis" proves the falsity of her declaration. (Appellee's Br. at 17.) While this assertion may bear on the materiality of Suddarth's declaration, it does not affect falsity. Any financial difference resulting from the use of different accounting methods provides no evidence that Shipper Direct did not in fact use cash-based accounting methods.

Last, the government argues that:

[f]rom the context of the affidavit and the lawsuit in which it was filed, Suddarth clearly was intending to mislead the district court by providing a false and seemingly innocent explanation for the discrepancies between the financial information that she provided to Echo Global Logistics and the financial information that she asserted was accurate after the closing of the sale of her business interests to Echo Global Logistics.

(*Id.* at 18.) The government does not cite the record for this otherwise conclusory statement. Whatever Suddarth's motivations may have been for making the declaration, § 1623 requires that the actual declaration—that Shipper Direct conducted its accounting on a cash basis—be literally false. *See* 18 U.S.C. § 1623(a); *Frost*, 125 F.3d at 386.

It is true that this court has found contextual evidence sufficient to support a conviction. *See Frost*, 125 F.3d at 386. For example, in *United States v. Frost*, this court found that context

---

[5] And for what it's worth, it's implausible to believe that only businesses that conduct their accounting on an accrual basis keep track of who owes them money or to whom they owe money.

suggesting a relationship was professional and not friendly could support a rational juror's conclusion that the defendant's statement that "they offered to look at my dissertation as a colleague and a friend" was false. *Id*. at 385–86.[6] But the contextual evidence proffered by the government here does not bear a similar relationship to the underlying statement. Even if it is true that Suddarth made the declarations in the affidavit to explain away her efforts to defraud Echo, these motivations provide no contextual clues about the method of accounting that Shipper Direct actually used.

The dissent correctly notes that the primary question before us is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime *beyond a reasonable doubt*." *Jackson*, 443 U.S. at 319 (emphasis added). But contrary to the dissent's accusations, we are not requiring that the government remove every reasonable hypothesis except that of guilt, nor do we "impose limitations on a jury's deliberations that do not exist under the law." Rather, in *this* case, given the dearth of evidence presented by the government at trial and the problems with its arguments on appeal, as discussed above, many doubts—too many for a rational juror to conclude beyond a reasonable doubt—exist as to the falsity of Suddarth's declaration. The dissent assumes that the jury drew inferences and made logical leaps not suggested to them by the evidence at trial. This weak "web of inference" is something a rational juror does not follow. *See Sliwo*, 620 F.3d at 637. There is no way for this court to view the evidence in the light most favorable to the prosecution when the prosecution has put forth no relevant evidence. We hold that no rational juror could have found that the government established the falsity of Suddarth's declaration, an essential element

---

[6] The jury in *Frost* also heard testimony from the alleged friend who explicitly stated: "I didn't necessarily do it as a friend, I did it as a paid employee." *Frost*, 125 F.3d at 386.

of the offense, beyond a reasonable doubt. It is thus unnecessary to discuss the sufficiency of the evidence supporting materiality, or any of the other claims that Suddarth raises.

IV.

For these reasons, we **REVERSE** Suddarth's conviction.

CLAY, Circuit Judge, dissenting. On May 27, 2015, Defendant Angela Suddarth was indicted in the Middle District of Tennessee on twenty-two counts arising out of the sale of her business's assets. Defendant was alleged to have defrauded the buyer, Echo Global Logistics ("Echo"), by making false statements about her company, Shipper Direct Logistics, Inc. ("Shipper Direct"); fabricating its financial information; committing wire fraud and mail fraud in conveying that information to Echo; stealing others' identities to cover her tracks; engaging in money laundering with the proceeds; and committing bankruptcy fraud during the course of an ensuing civil suit. A jury acquitted Defendant on twenty-one counts and convicted her of one. Specifically, the jury found that Defendant made a false declaration before a federal court, in violation of 18 U.S.C. § 1623, when she filed an affidavit in a civil suit brought by Echo declaring that "all accounting" for her business "[was] done on a cash basis." Defendant now appeals her conviction, asserting three claims of error. Her principal claim is that there was insufficient evidence to convict her of this offense. Defendant's claims are entirely without merit. The majority is wrong to find otherwise.

The primary question before us is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). We may overturn the jury's verdict only if its "finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam).

I disagree with the majority's contention that the jury's verdict fell below that threshold. The majority finds so only by misconstruing our required standard of review and improperly imposing limitations on the jury's authority to consider the evidence before them. I would respect

the jury's determination of what the evidence shows, and because Defendant's other challenges are without merit, I would affirm the jury's verdict in its entirety.

## FACTUAL BACKGROUND

A review of the facts of the case will assist in revealing the deficiencies of the majority's argument.[1] As of early 2012, Defendant was President and sole shareholder of Shipper Direct, a company that coordinated transportation of goods for other companies. At that time, Shipper Direct was having financial difficulties. Thus, in spring 2012, Defendant began negotiations to sell Shipper Direct's assets to Echo, which was engaged in the same business. Throughout those negotiations, Defendant provided a number of financial documents to Echo employees conducting diligence on Shipper Direct, including Echo employee Kyle Sauers. These negotiations culminated on July 19, 2012, when Shipper Direct and Echo executed an asset purchase agreement ("the Asset Purchase Agreement" or "APA") selling Shipper Direct's assets to Echo for approximately $9 million. Defendant signed the APA for Shipper Direct.

After the APA was executed, Echo discovered that Shipper Direct was worth considerably less than $9 million and, particularly, that Shipper Direct's actual finances did not reflect those represented in the financial statements Echo had been provided. Echo then filed civil fraud, conspiracy, and breach of contract claims against Defendant, her husband, and Shipper Direct in the United States District Court for the Northern District of Illinois. Echo obtained a default judgment against Defendant, which she sought to set aside. Defendant executed and submitted the relevant affidavit in support of that effort, declaring under penalty of perjury:

---

[1] Because this Court must "view[] the evidence in the light most favorable to the prosecution" when considering Defendant's sufficiency of the evidence claim, *Jackson*, 443 U.S. at 319, and resolve all conflicts in the testimony in favor of the government, *United States v. Siemaszko*, 612 F.3d 450, 462 (6th Cir. 2010) (citing *United States v. Bashaw*, 982 F.2d 168, 171 (6th Cir. 1992)), I accept as true all evidence relevant to that claim presented by the government.

6. That [Shipper Direct] did our accounting on a cash basis and Echo/Tenenssee [*sic*] Holdings, LLC wanted the numbers to reflect accrual so Kyle Sauers and Mike Bloss actually created accrual numbers and from load level detail reports from the freight management system. The final balance sheet which was provided at closing was prepared and provided to the closing attorneys by Kyle Sauers who worked for the Plaintiffs. The Plaintiffs insisted on numbers on an accrual basis which was not how Shipper Direct Logistics, Inc. accounted for its business.

. . .

10. That all accounting is done on a cash basis. Kyle Sauers and Mike Bloss wanted accrual numbers. Kyle Sauers prepared accrual load level detail accounting from the system while in the offices in TN. Kyle Sauers prepared the final closing balance sheet. Echo/Tennessee Holdings, LLC prepared the load level detail.

Defendant was later indicted on twenty-two counts, including for making a false declaration before a federal court, in violation of 18 U.S.C. § 1623, by stating in this affidavit that Shipper Direct did its accounting on a cash basis. Defendant's case was heard by a jury in the United States District Court for the Middle District of Tennessee beginning on January 8, 2019. Her trial concluded on January 16, 2019 with not guilty verdicts on twenty-one counts and a single guilty verdict on this 18 U.S.C. § 1623 charge.

**DISCUSSION**

Defendant's principal claim on appeal is that the evidence presented at trial was insufficient to convict her under 18 U.S.C. § 1623. To overturn the jury's verdict, we must conclude that no rational juror could have found beyond a reasonable doubt that her statement that Shipper Direct did all its accounting on a cash basis was both false and material.

Because this case turns on the distinction between accounting methods, it is important to understand what those methods are. As relevant here, a company's accounting method determines the date when it records the revenue it earns. *See* Raj Gnanarajah, Cong. Research Serv., 7-5700, Cash Versus Accrual Basis of Accounting: An Introduction 1 (2014). The two general methods of

accounting are cash-basis accounting and accrual-basis accounting. *Id.* A company using cash-basis accounting records revenue when it actually receives money. *Id.* A company using accrual-basis accounting records revenue when it earns the revenue, whether or not it has yet actually received any of the money. *Id.*

As an example, suppose that Shipper Direct entered a contract to provide services to Worldwide Widgets, for which Shipper Direct would receive $10,000 in revenue. Further suppose that Shipper Direct provided those services on September 1, and Worldwide Widgets had one month thereafter to pay Shipper Direct. Worldwide Widgets actually paid Shipper Direct on October 1. If Shipper Direct used cash-basis accounting, it would record the $10,000 in revenue on October 1, when Worldwide Widgets paid. If Shipper Direct used accrual-basis accounting, it would record the $10,000 in revenue on September 1, when it provided the services and earned the revenue.

Thus, a change from cash- to accrual-basis accounting would change the amount of revenue reflected on Shipper Direct's financial statements. If Shipper Direct used accrual-basis accounting, its documented revenue would reflect money yet to come in. That amount is typically designated as a "receivable." *Id.* at 20. If Shipper Direct used cash-basis accounting, its documented revenue would not reflect any such sums. *Id.* at 4.

With this groundwork laid, I turn to Defendant's claims.

**Sufficiency of the Evidence**

### A. Preservation

Though the majority skirts the issue, we must begin by assessing whether Defendant's claim has been preserved for our review. A defendant properly preserves a sufficiency of the evidence claim by making a Rule 29 motion for judgment of acquittal at the end of the prosecution's case-in-chief and renewing that motion at the close of the evidence. *United States v.*

*Chance*, 306 F.3d 356, 368 (6th Cir. 2002) (citing *United States v. Dandy*, 998 F.2d 1344, 1356 (6th Cir. 1993)). A Rule 29 motion asserts that "the evidence is insufficient to sustain a conviction," and therefore the defendant must be acquitted. Fed. R. Crim. P. 29(a). Defendant made a Rule 29 motion related to the current offense at the close of the government's case, but she explained that her motion "deal[t] with the proper venue for perjury." (Trial Tr., R. 160 at PageID #1841.) At the close of evidence, she renewed this motion "only based on these other grounds [she] had raised before." (Trial Tr., R. 162 at PageID #2448.) Thus, Defendant's argument before the district court was not that there was insufficient evidence to convict her of an 18 U.S.C. § 1623 offense, but that there was insufficient evidence to show that the Middle District of Tennessee was the correct place to try her for this offense.

Ordinarily, when a defendant makes a Rule 29 motion on specific grounds, this Court finds all grounds not asserted in that motion waived. *See United States v. Porter*, 886 F.3d 562, 566 (6th Cir. 2018). However, the government did not argue that Defendant had waived her sufficiency of the evidence claim in either of its briefs on appeal. Though it argued waiver at oral argument, it conceded that this argument should have been made in its briefs. Thus, the government arguably forfeited Defendant's waiver. "[A]s with any other argument, the government can forfeit a waiver argument by failing to raise it in a timely fashion." *United States v. Boudreau*, 564 F.3d 431, 435 (6th Cir. 2009) (quoting *Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998)). We regularly find waivers to have been forfeited in other contexts. *See, e.g.*, *United States v. Williams*, 641 F.3d 758, 763–64 (6th Cir. 2011) ("[B]ecause the United States failed to request that we apply plain-error review, it has forfeited any argument that we should apply that standard . . . ."). Although it is within our discretion to find Defendant's claim waived, given this precedent

16

and the lack of any concession by Defendant in the instant action, Defendant's argument will be addressed herein as if it had been properly preserved.

### B. Standard of Review

This Court reviews a district court's denial of a motion for judgment of acquittal *de novo*. *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004) (citing *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir. 1996)). When considering a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. In assessing the evidence, we are bound to make "[a]ll reasonable inferences and resolutions of credibility . . . in the jury's favor" and may uphold a conviction on the basis of circumstantial evidence alone. *United States v. Tragas*, 727 F.3d 610, 617 (6th Cir. 2013) (quoting *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012); and then citing *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010)). Thus, a defendant must bear "'a very heavy burden' to show that the government's evidence was insufficient." *Id.* (quoting *United States v. Kernell*, 667 F.3d 746, 756 (6th Cir. 2012)).

In the case at bar, the jury found the evidence sufficient to conclude beyond a reasonable doubt that Defendant had committed each of the elements of an 18 U.S.C. § 1623 offense. An individual violates 18 U.S.C. § 1623 if "under oath (or in any declaration . . . or statement under penalty of perjury . . .) in any proceeding before or ancillary to any court or grand jury of the United States [she] knowingly makes any false material declaration." 18 U.S.C. § 1623(a). Defendant contests two specific elements, arguing that the evidence was insufficient to show that her statement was either false or material. Falsity and materiality are essential elements of an 18 U.S.C. § 1623 offense. *See United States v. Frost*, 125 F.3d 346, 386 (6th Cir. 1997) (falsity); *Johnson v. United States*, 520 U.S. 461, 465 (1997) (materiality). Defendant does not meaningfully

contest the sufficiency of the evidence to show the other elements of her offense—that she "knowingly made" her false statement and that she made that statement "before or ancillary to" a United States court or grand jury. 18 U.S.C. § 1623; *see also United States v. Ramirez*, 635 F.3d 249, 260 (6th Cir. 2011).

## C. Falsity

The majority's opinion focuses entirely on whether or not Defendant's statement was false. It concludes not just that there was insufficient evidence of falsity, but that the government "has failed to put forth *any* evidence that Shipper Direct conducted its accounting on other than a cash basis." This statement is itself demonstrably false. Nevertheless, in so finding, the majority apparently excuses itself from applying our required standard of review, as it contends "[t]here is no way for this court to view the evidence in the light most favorable to the prosecution when the prosecution has put forth no relevant evidence." This statement is indefensible. In fact, the evidence presented at trial overwhelmingly suggested Shipper Direct used accrual-basis accounting. While the evidence argued by the government on appeal is not voluminous, a review of the record before the jury at trial reveals ample evidence to allow a rational juror to find beyond a reasonable doubt that Defendant's statement that Shipper Direct did its accounting on a cash basis was false. That same evidence suggests Defendant must have recognized the statement's falsity.

Throughout her negotiations with Echo, Defendant provided Echo employees with a number of financial statements that were explicitly labeled as accrual-based statements. The government introduced multiple of those statements into evidence. It specifically sought witness testimony about a 2011 profit and loss statement and a June 30, 2012 balance sheet. (Gov't Trial Exh. 1:2; Gov't Trial Exh. 2:2.) Both were labeled "Accrual Basis" and were identified as accrual-based statements in witness testimony, including, in the case of the profit and loss statement, by

18

Defendant herself. (Sauers Direct, R. 159 at PageID #1569, 1575; Suddarth Cross, Trial Tr., R. 160 at PageID #2011.)

The majority wrongly asserts that the materials submitted as part of an asset purchase negotiation have no bearing on whether Shipper Direct conducted its accounting on a cash basis. Instead, it dismisses these materials as constituting no evidence whatsoever. It notes that Defendant's affidavit acknowledges that she submitted materials developed on an accrual basis to Echo during negotiations.

However, the evidence presented to the jury suggests these materials do reflect how Shipper Direct conducted its accounting. The parties' Asset Purchase Agreement clearly states that the financial statements Shipper Direct provided to Echo "have been prepared in accordance with [Shipper Direct's] standard accounting policies and procedures applied on a consistent basis." (Gov't Trial Exh. 7 at 021.) It further states that Shipper Direct's purchase price was based on its assumed 2011 earnings "determined in accordance with [its] standard accounting policies and procedures, applied on a consistent basis." (*Id.*) This evidence plainly connects Shipper Direct's accrual-basis financial statements to its standard accounting procedure. And out of all of the text of the APA, the government affirmatively brought this section of the APA to the jury's attention. After introducing the APA into evidence, the government directed witness Kyle Sauers to this portion and had him read each of these passages aloud. (Sauers Direct, R. 159 at PageID #1598–99.) In the same section as the portions read aloud, the APA specifically identifies financial statements aligning with the dates of the accrual-basis statements introduced—"statements of income and cash flow" for 2011 and a "balance sheet . . . as of June 30, 2012"—as statements that would have been prepared under Shipper Direct's standard accounting procedures. (Gov't Trial Exh. 7 at 021.) Asked what this portion of the APA meant, Sauers explained that this was where

19

Defendant "sa[id] here's all the things that we've told you about the business and it's all accurate and true." (Sauers Direct, R. 159 at PageID #1594–95.) Defendant herself later agreed that she signed this APA on behalf of Shipper Direct. (Suddarth Cross, Trial Tr., R. 160 at PageID #2028.)

Viewing this evidence together, a rational juror could certainly find that Shipper Direct's "standard accounting policies and procedures" must have been accrual-based, and not cash-based, as Defendant stated in her affidavit. Coming to this conclusion does not require a "web of inferences" or "sheer speculation," as the majority alleges, but merely an ability to make basic connections. The APA says that Shipper Direct's financial statements were developed under its standard accounting procedures. The financial statements put before the jury were developed using accrual-basis accounting. Therefore, Shipper Direct used accrual-basis accounting.

The majority makes every effort to dismiss this evidence. It asserts that the financial statements introduced in the APA are not necessarily the same accrual-based financial statements introduced into evidence. It goes so far as to say there is "no evidence" that these are the same statements, despite acknowledging that the dates and descriptions of the financial statements the APA identifies align with the financial statements in evidence. But even if this alignment were the only evidence put before the jury, the jury is permitted to make reasonable inferences from it. *See Tragas*, 727 F.3d at 617. We are bound to respect those inferences—on review, we must make all reasonable inferences in the jury's favor. *Id.* No evidence, no jury instruction, and no legal rule suggests this inference is unreasonable.

Still, this alignment is not the only evidence suggesting such a connection, nor is it the only evidence grounding the jury's conclusion. Sauers, who conducted Echo's diligence on Shipper Direct, testified that Shipper Direct's financial statements "were always indicated as accrual based accounting," suggesting any financial statements the APA could refer to were developed on an

20

accrual basis. (Sauers Direct, Trial Tr., R. 159 at PageID #1576.) Sauers also directly testified that "the agreements [between Shipper Direct and Echo] referred to accrual based accounting." (*Id.*) The APA by itself includes more indications of accrual-based accounting, including language referring to "Accounts Receivable" and "Accounts payable." (Gov't Trial Exh. 7 at 048, 129.) As Sauers explained to the jury, "you wouldn't have accounts receivable or accounts payable [on a financial document] if you were doing cash basis accounting because the purpose of that is that you account for it when the money comes in or out. If you're going to track what customers owe you and what you owe your vendors or in our case the trucking companies, that's, by definition, accrual basis accounting." (Sauers Direct, Trial Tr., R. 159 at PageID #1576–77.)

Given the apparent conflict between the APA and Defendant's affidavit, a rational juror could not only conclude that one of those statements must be false, but could conclude that Defendant knew her statement in the affidavit was false. As it happens, Defendant barely touches upon the required *scienter* for her offense and wrongly suggests that willfulness, rather than knowledge, is required.[2] *See* 18 U.S.C. § 1623. Even had Defendant argued that there was insufficient evidence to show *scienter*, sufficient evidence was provided to conclude that she was aware of Shipper Direct's accounting practices and therefore knew her statement was false, based upon the conflict between the APA and Defendant's affidavit, Defendant's position as Shipper Direct's president and sole shareholder, and her role in sending accrual-basis financial statements to Echo.

Faced with this evidence, the jury's conclusion that Defendant's statement that Shipper Direct used cash-basis accounting was false does not "fall below the threshold of bare rationality."

---

[2] In this regard, it should be noted that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004) (quotations and citations omitted in original) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

*Coleman*, 566 U.S. at 656. To justify its decision, then, the majority notes that the government did not explicitly argue that the APA's language regarding the use of "standard accounting policies and procedures" was connected to Shipper Direct's accrual-basis financial statements. But this does not make the jury's conclusion irrational. The jury received all the information necessary to make such a connection. We must "give full credit to the responsibility of the jury to weigh the evidence . . . and to draw inferences," *United States v. Washington*, 715 F.3d 975, 979 (6th Cir. 2013) (citing *Jackson*, 443 U.S. at 319), including inferences not explicitly argued by the government. The jury was not bound to confine its consideration of testimony and exhibits to the government's principal argument, so long as its verdict was supported by substantial evidence and rendered in accordance with the law and the court's instructions. By arguing to the contrary, the majority seeks to impose limitations on a jury's deliberations that do not exist under the law.

Most egregiously, to reach its decision, the majority misconstrues our standard of review. It chooses to focus entirely on the phrase "beyond a reasonable doubt," even construing the Supreme Court's original statement to emphasize not that "*any* rational juror" must be able to come to the jury's conclusion, but that the juror must find so "*beyond a reasonable doubt*." Applying the rule in this manner, the majority finds that because Defendant's affidavit also presents a possible explanation for the accrual-based statements, a rational juror must have a reasonable doubt about whether Shipper Direct used cash-basis accounting. But our case law clarifies that the evidence "need not 'remove every reasonable hypothesis except that of guilt'" in order to sustain a guilty verdict. *United States v. Lee*, 359 F.3d at 418 (quoting *United States v. Stone*, 748 F.2d 361, 63 (6th Cir. 1984)).

More importantly, the majority's construction of our standard of review misrepresents our task on appeal. Of course, it is undeniably true that the jury must find each element of the

defendant's offense beyond a reasonable doubt. But maintaining such a narrow focus causes the broader question to slip out of view—that is, is it possible for any single rational juror to conclude, viewing all of the evidence before that juror as favorably to the prosecution as it can be viewed, that Defendant's statement was false beyond a reasonable doubt. Instead, the majority apparently asks whether, considering only their credited evidence—that is, the evidence that the government explicitly introduced and identified as relevant to this issue—Defendant's statement was false beyond a reasonable doubt.

In doing so, the majority "unduly impinge[s] on the jury's role as factfinder." *Coleman*, 566 U.S. at 655. "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id.* at 651 (quoting *Cavazos v. Smith*, 565 U.S.1, 1 (2011) (per curiam)). The jury's role and its deliberations should be given the respect that the law requires. "[T]rial by jury in criminal cases is fundamental to the American scheme of justice," *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968), and is clearly established in the Constitution, *see* U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury . . . ."); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."). This reflects "a profound judgment about the way in which law should be enforced and justice administered." *Duncan*, 391 U.S. at 155. The majority's decision disturbs that judgment.

### D. Materiality

Because it finds insufficient evidence of falsity, the majority does not address the materiality of Defendant's statement, which is also asserted by Defendant. Defendant's materiality argument is unpersuasive.

"A statement is material if 'it has the natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed.'" *United States v. Lee*, 359 F.3d 412, 416 (6th Cir. 2004) (quoting *United States v. McKenna*, 327 F.3d 830, 838 (9th Cir. 2003)). In this case, the relevant decision-making body was the court in Defendant's civil suit with Echo. Defendant's statement that Shipper Direct always used cash-based accounting was material to at least Echo's breach of contract and fraud claims in that suit.

Defendant's affidavit implied that a change in accounting methods, rather than any misrepresentations, caused the disparity between Shipper Direct's financial statements submitted during negotiations and its actual financial state. (*See* Gov't Trial Exh. 27 at 001–02.) She reiterated before the district court that Shipper Direct's revenues reached $18 million only because of "outstanding receivables" revealed when accounting was done on an accrual basis. (Suddarth Cross, Trial Tr., R. 160 at PageID #2011.) A Defendant admission that Shipper Direct did not use cash-based accounting could have eliminated that explanation for the disparity and prompted further inquiry into its cause, potentially revealing a breach of contract or fraudulent conduct.

Defendant asserts on appeal that the government's only evidence of materiality was testimony by Kyle Sauers that Shipper Direct's "overall financials, the profit and loss, would not change much between the two accounting methods." (Sauers Direct, R. 159 at PageID #1579.) But the fact that Sauers made this statement does not make it true. Furthermore, this statement is taken out of context. In response to the same question, Sauers noted that "[t]he balance sheet would look different" if developed on a cash basis rather than an accrual basis, "because you wouldn't have the receivables and payables on there." (*Id.*) He also acknowledged that the accounting method affects timing "because your customer might have paid you on May 31 instead of June 1 or January

2 instead of December 1," resulting in "an extra few thousand dollars in one period one month one year versus the next." (*Id.*)

In context, it is clear that Sauers was contending that the accounting method could not explain discrepancies of the magnitude that Echo saw in Shipper Direct's statements. He suggested that he would not have recommended purchasing Shipper Direct if he had known about its true financial state. (*Id.* at #1578, 1645.) As Sauers later explained, Defendant's actual financial statements suggested Shipper Direct brought in less than a third of the revenue Defendant had claimed. (*Id.* at #1644–45.) This testimony conflicted with Defendant's own, which suggested that "outstanding receivables" that were not apparent in cash-basis statements accounted for these vast discrepancies. (Suddarth Cross, R. 160 at PageID #2011.) In the context of Defendant's own explanation, Sauers' conflicting testimony could make a factfinder more inclined to believe that Defendant purposefully obscured the cause of the financial discrepancies.

To be sure, Sauers understates how a company's accounting method could affect its apparent financial health. But Defendant must rely on this out-of-context statement only because her argument, that the accounting method Shipper Direct used made no difference to her civil case, is otherwise indefensible. Even a basic understanding of standard accounting rules suggests that accounting method matters. Many companies prefer accrual-basis accounting because they believe it provides a clearer, more accurate picture of a company's financial health. *See* Gnanarajah, Cash Versus Accrual Basis of Accounting: An Introduction at 1. Cash-basis accounting, on the other hand, can result in "significant distortion[s]" in a company's financial statements if, for instance, "it has received a large payment but has not yet delivered the product or provided the service." *Id.* Defendant herself explained that receivables apparent in accrual-based statements reflected a substantial difference in her apparent revenue—suggesting Shipper Direct's accounting method

was indeed material. (Suddarth Cross, R. 160 at PageID #2011 (suggesting that her bank statements did not reflect "outstanding receivables that we hadn't collected in," which brought Shipper Direct's revenue to $18 million.)

After weighing the evidence, making their credibility determinations, and drawing inferences, *Washington*, 715 F.3d at 979, the jury concluded that Defendant's statement was material. We are not entitled to supplant that judgment with our own. Thus, because Defendant has not carried her "very heavy burden" to show that the evidence as to either falsity or materiality was insufficient, *Tragas*, 727 F.3d at 617, I would deny her sufficiency of the evidence claim and affirm the jury's conviction. Defendant's other claims are discussed below.

**Venue**

Defendant also argues that the district court erred in denying her Rule 29 motion for acquittal on the basis of improper venue. The majority fails to address this claim. As it happens, this claim is easily disposed of, as it has not been preserved for this Court's review. While Defendant made and renewed a proper Rule 29 motion on this basis, she failed to raise the issue prior to trial, and therefore forfeited any objection to venue.[3] Under Federal Rule of Criminal Procedure 12(b)(3), a motion asserting improper venue "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(i). A defendant forfeits objections if she does not challenge venue prior to trial when "the alleged defect [is] readily apparent on the face of the indictment." *United States v. Gross*, 626 F.3d 289, 293 (6th Cir. 2010). Defendant's indictment

---

[3] The government contends that Defendant waived this objection knowingly, pointing to defense counsel's statement that "tactically I thought it was better to raise it after jeopardy had attached in the case." However, defense counsel was referring to an objection on a prior count in making this statement. (*See* Trial Tr., R. 160 at PageID #1840–41.) In the absence of evidence that there was a legally recognized exception to Defendant raising this objection, it is more accurate to say that Defendant forfeited this argument.

stated that Count 18 was based on an affidavit filed from Nashville, Tennessee with the United States District Court for the Northern District of Illinois. At trial, Defendant argued that the Northern District of Illinois was the proper venue because that was where the relevant proceeding took place and that venue was not permitted in the Middle District of Tennessee on the basis that the affidavit was filed there. This alleged defect was readily apparent from the face of the indictment and, having not been raised by pretrial motion, is therefore forfeited.

### *Ex Parte* Communication

The majority also fails to address Defendant's final argument. Defendant asserts that the district court committed reversible error by responding to a jury note asking what they should do if they could not come to a unanimous verdict, without first conferring with the parties. (R. 129 at PageID #1000–01.) In the response in question, the court noted that it was in the middle of a sentencing hearing, said it would get back to the jury in an hour, and told them to continue deliberating. (*Id.*) Within the hour, the jury reached a verdict.

This claim is also unpreserved. When the jury indicated that it had reached a verdict, but before the court received that verdict, the court summoned the parties and explained what had happened. Defendant did not object to this communication at that time, nor did she raise this claim in any post-trial motion. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009) (holding that to preserve an argument, a litigant must (1) state "the issue with sufficient clarity to give the court and opposing parties notice that it is asserting the issue" and (2) provide "some minimal level of argumentation in support of it.") Because Defendant did not raise this issue before the district court, she has forfeited it on appeal.

**CONCLUSION**

This case asks us to determine whether Defendant was wrongfully convicted based on the facts and legal arguments before the jury and the district court. Because Defendant's improper venue and *ex parte* communication claims are unpreserved, her sufficiency of the evidence claim is the only one remaining.

Applying the appropriate standard of review, the record plainly shows that the evidence presented was sufficient to allow a rational juror to conclude that Defendant's statement that Shipper Direct did its accounting on a cash basis was both false and material. To find otherwise, my colleagues cast aside relevant evidence and seek to impose new, legally-unsupportable limitations on the jury's ability to consider evidence. They then wrongly take on the jury's responsibility to decide what the evidence shows. I would not so usurp the jury's role. Instead, I would affirm the district court's decision in all respects. I therefore respectfully dissent.